Good morning, Your Honors. May it please the Court, my name is Chris Hatfield. I represent the taxpayer in this case. The taxpayer is a minor, so we won't be using his name. The key issue in this case is whether or not the taxpayer is responsible for paying the tax on a distribution from the benefit of a retirement plan. And the unusual issue in this case is that the primary beneficiary of this plan happened to be the plan administrator's spouse, and she was, shortly after his death, charged with his homicide. She originally pleaded not guilty. She then was in the middle of trial. During her trial, she entered a plea and, as a result, pled to a lesser charge and got the benefit of basically used the plan benefit as partial consideration for getting a lesser sentence. And so our argument is that she received the benefit of the plan and she used it, and having used the benefit, therefore she's taxable, she becomes a distributee. There's only one case on this that either party has been able to find that is of any relevance. It's a United States Tax Court case called Darby. It's cited in the materials. Darby makes a couple of points that I think are important for the Court. One is, is that the plan itself, that the individual actually receiving the money from the plan is not necessarily the distributee. So in other words, just because the taxpayer ultimately received the money. In that case, it was someone who had the legal entitlement to get the money. I'm sorry? It was the husband. It was the husband who would have received the money, but he negotiated or the Court helped him toward a negotiation or toward a resolution where he was required to pay over certain sums to his ex-wife. That's true, Your Honor. And in this case, Lisa Northon was also named as a beneficiary. She was the primary beneficiary. But she could never get the money. Well, I think it's in the order of things. She actually used it. She, up until the point she was ---- She may have negotiated for a benefit, but the money, which is what the tax is imposed on, the money was never going to go to her unless she prevailed in her criminal defense, which we'll never know because she ultimately fled out. I think the key here, Your Honor, is under Oregon law, the determination of a slayer is not retroactive. She's not a slayer until she enters that plea. And there's a distinction if you have to ---- But she wasn't going to get the money before she entered the plea either because she'd been charged. The money was frozen. It was frozen, but there was no determination. At that point, there was no determination as to whether she was a slayer or not. There was certainly a contingency. But I don't think that just because there's a contingency at that point, you know, that prevents her from using that, and she was able to effectively use it in consideration. Well, she could use it and still not be the distributee, right? I'm sorry, Your Honor. She doesn't ---- just because she used it in that fashion doesn't necessarily mean she's the distributee or the only distributee. Well, I think, Your Honor, that would be a unique position. I haven't been able to find any authority that says you can actually spend money that you haven't received. Yes. She never actually received it. She's not spending it. She's not spending it. She's using it as a lever. She's using it as a lever to negotiate a position. But the law doesn't ---- I mean, the whole point for the negotiation, because it was uncertain, you know, whether she had any right to it at all. It was always contingent. The law doesn't ---- Once she was charged, right? Yes. It was contingent. So it was contingent. So at best, you know, she was a contingent at that point. When she negotiated that agreement, at that point, she was at best a contingent beneficiary, wasn't she? Nothing ---- she had no better position than that. I would agree with that, Your Honor. But under ---- she's not under several cases that I've cited in my materials. You're not required to physically receive the money or actually receive the check in order for it to be treated as income. But why logically would you want to separate them? I mean, I understand the logic of Darby. And maybe I should ask, are we bound by Darby? Certainly not, Your Honor. It's a nice ---- it's a tax court case. So I understand there are circumstances where courts could decide, well, in this particular set of facts, we'll separate the tax burden from the cash itself. Ordinarily, the tax burden stays with the money. And I can't figure out any logical reason why in this case it shouldn't stay with the money. Because the money plainly was never going to her. It was always going to go to the son. The nature of retirement plans of this nature is you don't pay taxes as it goes in, you pay taxes as it goes out. In this case, it goes out to the son. Why isn't that where the taxes belong? Because she received the benefit of it. She was able to just the act of using it. Now, the son was what, like a contingent beneficiary under the plan? Yes, Your Honor. Right? Okay. So you're saying she received the benefit of it. You're saying he did not receive any benefit from it? Well, ultimately, the cash was distributed to him. So he received the benefit from it, too. He did receive it. And he's a beneficiary. But under Section 402, only the distributee is the individual that's responsible for the tax. I understand that. And so the issue for us to figure out is who is the distributee, right? Yes, Your Honor. And your entire case hinges on the assertion that, well, because she was able to use her contingent interest as a lever in negotiating the plea agreement, she's the distributee. Yes. It's as simple as that, right? It is as simple as that, Your Honor. The government's position is, well, because the son, as the contingent beneficiary, received actually received distribution of the funds, he should be treated as a distributee. Those are two simple positions, aren't they? Those are the simple positions. And there's nothing exactly on point. That's correct, Your Honor. I think the key issue and one thing I'd like to focus in on is Oregon's statute, Slayer's statute itself. And as I talked about in my brief, the government seems to repeatedly make the argument that the status as a Slayer is retroactive. But if you look at the two Slayer statutes, there's a distinction between the treatment of property that passes by will or intestate versus property such as this property that plans on to pass under a benefit plan. If the property we're talking about property that would pass under a will, for example, Oregon's statute specifically says that the Slayer is presumed or is deemed to have pre-deceased the individual originally owning the plan. In other words, you would have treated Lisa Northon as having pre-deceased Christopher Northon. But the statute, the portion of the Oregon Slayer statute that specifically deals with this particular property, a plan benefit, doesn't have that language. And as I cited in my brief, when you have two related statutes that have dramatically different language, you assume that there was a reason for that. Kennedy, what difference does it make now that it's not retroactive? Well, because if it was property that was passing under the will, then the government would have been correct that she was deemed to have been treated as a Slayer from the very beginning. In other words, she would have been, as of the moment of Christopher Northon's death, she would have been treated as having pre-deceased him. And so there would have been no possibility. Here, that remained contingent up until the point that she used the plan benefits to negotiate a plea bargain. But the tax is not imposed until there's a distribution, right? Is that right? That's true. So isn't the key point of determination of, you know, who is the distributee is who is the distributee at the time of the distribution, because that's when the tax is imposed? Yes, Your Honor. But I think the key issue here, and as you've already noted, is our position is that she effectively was distributed when she received the benefit of it in her plea bargain. Did you want to save some time for? No, Your Honor. I'm sorry. Yes, I'm asking. Yes, you do. Sorry. All right. Thank you. May it please the Court, my name is Jennifer Rubin, and I represent the government in this case. The government agrees with the point that Judge Tashima just made at the end of the argument, which is that the key question is who is the distributee, who is the eligible person eligible to receive the actual distribution at the time the actual distribution was made? Actual distribution meaning actually dispersing the funds. Here, this dispersal happened in 2002. At that point in time, there was one person who was eligible to receive the funds, and that was the taxpayer. There was one person who received the funds, that was the taxpayer. There's one person who should pay the taxes, that is the taxpayer. That is what you see in the language of Section 402A1. And again, as was pointed out during the argument, that's a natural consequence of taking a distribution from a tax-deferred plan. This money built up without taxes being paid, it came out of the plan in 2002. Taxes were properly paid and properly should remain paid by the taxpayer. What's the distinction you suggest between the Darby case and this one? Assuming that we would adhere to Darby, why is this case different? Well, first of all, I think this case is what happened in this case in terms of the taxation was very consistent with Darby. The person who actually received the distribution in that case was the husband. It's only after distribution that he passed the money to someone else pursuant to an outside law. Here, the person who received the actual distribution who was deemed the eligible distributee under the plan was the taxpayer. And so we would actually say you don't necessarily even have to distinguish Darby. But if you were to try to distinguish Darby, the distinction would be between Lisa Northon and the husband in the Darby case, because Lisa Northon was not eligible to receive the funds and didn't receive the funds. That's the distinction. But she was eligible at some point in time. She had a contingent claim to the funds. She – while Christopher Northon was alive, he could have, of course, revoked the beneficiary designation. And after he died, she came under immediate suspicion. And, in fact, the plan froze the funds, as it was permitted to do under Oregon law, because there was a serious claim that she was a slayer. So there was never a point in time when she could have called up the plan and said, I have a right to these funds. You have to distribute them to me. Under every case that was cited in these – in our briefs, including the Campbell case, including the Patten case, including the Jones case, including Meisner, including Green, all of these cases make them very clear. That if you do not have an absolute, unrestricted right to the funds, there can really be no claim that you've gotten. Kennedy, was it your – is it the government's position that the right to these funds never vested in the mother? That's right. That's correct. At the time of Christopher Northon's death, there were competing claims to the money, specifically the primary beneficiary and the secondary beneficiary.  she was still alive, would have had the primary claim, would have gotten the funds. As it happens, there was a serious claim that she was a slayer. And therefore, throughout this timeframe, regardless of how we even think about whether there was retroactivity or anything like that under the Oregon statute, there was always, always a contingency, always an uncertainty as to her claim to these funds. And that is the critical point. And the critical point being that the actual distribution is the key under the statutory language in the U.S. when we look at the Campbell case. So you look at when the actual distribution occurred, who was the eligible distributee? We know who the eligible distributee was. It was the taxpayer. And so the taxpayer was the one who should have paid these funds. In the end, we don't agree with the concept that she received these funds in any way because she couldn't receive the funds. And we don't agree with the concept that she traded the funds for anything because she couldn't have traded the funds for anything. Instead, she just engaged in a simple plea bargain. And that did not trigger taxation under Section 402A1. Are there any further questions? Thank you. We, for the reasons stated in my brief, we urge you to affirm. Thank you. Thank you, Your Honors. A point I'd really like to hone in on is that there's no factual dispute that she did make a trade. And that was made clear from the affidavit from the assistant district attorney that actually participated in the case. That was not a fact that was contested at any point down at the lower court. This case comes up to the court on the summary judgment. The other point is that I'm not finding any language in Section 402 that specifically says that it's the writing of the check that is the point of distribution. And again, it's our position that she effectively had a taxable, Mrs. Northon had a taxable event at the time she used that as consideration, at the time she was able to use that money to purchase something. And what she purchased was her lower settlement. Okay. Thank you, Your Honor. Thank you very much. The case is submitted. And this ends our session in court. Thank you very much.
judges: Tashima, Paez, Clifton